IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| John Drayton, #137499, | ) | C/A No.: 1:14-3852-JMC-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Edsel Taylor, Warden of McDougall | ) | |
| Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner John Drayton is an inmate at the McDougall Correctional Institution of the South Carolina Department of Corrections ("SCDC") who filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's motion for summary judgment and return. [ECF Nos. 9, 10]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion by January 8, 2015. [ECF No. 11]. Petitioner filed a response on December 22, 2014. [ECF No. 13].

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted.

I.    Factual and Procedural Background

Petitioner was indicted by the Orangeburg County grand jury in November 2009 for entering a bank, depository or building and loan association with intent to steal

(2009-GS-38-1555). [ECF No. 10-1 at 77–78]. Petitioner was represented by Douglas Mellard, Esq. [*Id.* at 3]. On February 4, 2010, Petitioner entered a negotiated guilty plea to accessory before the fact of entering a bank with intent to steal before the Honorable James C. Williams, Jr., Circuit Court Judge. [*Id.* at 3–16]. The charge carried a maximum of 30 years, and Judge Williams sentenced Petitioner to a negotiated sentence of 15 years. [*Id.* at 7, 15]. Petitioner did not file a direct appeal. [*Id.* at 18].

On March 5, 2010, Petitioner filed an application for post-conviction relief ("PCR"), asserting claims of ineffective assistance of counsel, due process violations, and CDR code issue. [*Id.* at 17–23]. Petitioner, through PCR counsel, Charles T. Brooks, III, filed an amended PCR application on January 27, 2012, expanding on his asserted claims. [*Id.* at 24–26].

A PCR evidentiary hearing was held before the Honorable DeAndrea G. Benjamin, Circuit Court Judge, on May 24, 2012, at which Petitioner and Mr. Brooks appeared. [*Id.* at 32–68]. On August 3, 2012, Judge Benjamin filed an order of dismissal. [*Id.* at 69–76].

Petitioner appealed from the denial of PCR on May 7, 2013. [ECF No. 10-2]. He was represented by Appellate Defender Benjamin John Tripp of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who filed a *Johnson* petition[1] for writ of certiorari in the South Carolina Supreme Court on or about January 24,

---

[1] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967), to post-conviction appeals). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct

2

2014, raising the following issue: "Did the PCR court err in finding Petitioner voluntarily pled guilty where plea counsel repeatedly told Petitioner he should accept the plea deal but never discussed Petitioner's interests in taking a chance at trial and where counsel communicated his advice by statements that Petitioner found intimidating?" [ECF No. 10-3 at 3]. Petitioner's counsel asserted that the petition was without merit and requested permission to withdraw from further representation. [*Id.* at 9]. Petitioner filed a *pro se* brief in which he raised the following issues:

> Did the court enhance the sentence of negotiated 15 years non-violent, non-most serious without my knowledge. In the plead bargain there is no stipulation on record or on the sentencing order that says anything about a mandatory sentence. This was not brought to my attention until I got to the South Carolina Department of Correction. This was an hidden agenda that was not enclose or brought to my attention during the plead offer. The sentence that I was advise to plead to don't line up with my max-out, parole eligibility or anything that a non-violent 15 year sentence is entitle or eligible for.

[ECF No. 10-5 at 3] (errors in original).

By order dated September 11, 2014, the South Carolina Court of Appeals denied the petition for certiorari. [ECF No. 10-6]. The remittitur issued on September 29, 2014. [ECF No. 10-7]. Petitioner filed this federal petition for a writ of habeas corpus on September 29, 2014. [ECF No. 1-2 at 1].[2]

---

a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

[2] The petition was received by the court on October 1, 2014, and docketed on October 2, 2014. [ECF No. 1]. However, because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack*, 487 U.S. 266 (1988). The envelope containing the petition was deposited in the prison mailing system on September 29, 2014. [ECF No. 1-3 at 1].

II.    Discussion

Petitioner raises the following grounds in his petition:

**Ground One:**    The South Carolina Dept. of Corrections (SCDC) unlawfully Enhance petitioner, Drayton Sentence From 65% to 85% in clear violation of South Carolina statutory and CDR code

**Ground Two:**    Ineffective Assistance of Counsel

[ECF No. 1 at 5–8] (errors in original).

A.    Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ.

P. 56(e).

    B.    Habeas Corpus Standard of Review

        1.    Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

        2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present

his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

> a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—
>
>> (A)     the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)     (i) there is an absence of available State corrective process; or
>>
>>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR.   State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976).   If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP.   Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[3] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

---

[3] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar.   Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir.2000) (citing *Matthews v. Evatt,* 105 F.3d 907, 911 (4th Cir.1997) (internal quotation marks omitted)). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir.1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy,* 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,* 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court *"outside* of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854.   As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted," *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain

claims to the South Carolina Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals.

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.   As the Supreme Court explains:

. . . [state procedural rules promote] not only the accuracy and efficiency of

9

judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986), *superseded by statute on other grounds* (AEDPA).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply.  *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

10

3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the states courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred.  *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim.  *Id.*   Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995).   However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

C.     Analysis

1.     Ground One

As an initial matter, Respondent argues that Petitioner's claim in Ground One is not cognizable. The undersigned agrees that Petitioner's claim in Ground One that the SCDC has unlawfully enhanced his sentence is not cognizable, as Petitioner has not identified a claim that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. To the extent that Petitioner challenges his classification within the SCDC, that does not appear to be a proper claim for a habeas action. *See Clemmons v.*

11

*South Carolina*, No. 0:08-cv-607-RBH, 2008 WL 2845636, at *1 (D.S.C. July 18, 2008) ("Unlike petitions brought under § 2254, which challenge the validity of a state court conviction and sentence, petitions brought under § 2241 generally challenge the execution or implementation of a sentence, such as parole matters, sentence computation, calculation of good time credits, prison disciplinary actions, and transfers."). *But see Eaddy v. Pate*, No. 5:13-cv-2932-RBH-KDW, 2014 WL 368649, at *4–5 (D.S.C. Feb. 3, 2014) (recognizing that circuit courts are split on whether § 2241 or § 2254 is the proper statute under which to challenge the execution of a sentence, but acknowledging that the Fourth Circuit does not appear to have taken a definitive stance and also noting that some judges within the District of South Carolina have adopted the majority view "that § 2254 is the exclusive vehicle for habeas corpus relief by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying conviction"). To the extent that the district judge finds Petitioner's Ground One to state a proper habeas claim under § 2254, the undersigned recommends finding that the claim has no merit.

In Ground One, Petitioner argues that because the crime to which he pled guilty is non-violent, he should only be required to serve 65% of his sentence, instead of 85%, as he claims the SCDC has classified him. However, the fact that Petitioner pled to a non-violent crime does not control the applicable percentage of the sentence he is required to serve.

Under South Carolina law, "an inmate convicted of a 'no parole offense' as defined in Section 24-13-100 and sentenced to the custody of the Department of Corrections . . . is not eligible for early release . . . until the inmate has served at least eighty-five percent of

the actual term of imprisonment imposed." S.C. Code Ann. § 24-13-150(A). Pursuant to S.C. Code Ann. § 24-13-100, Petitioner's conviction is a "no parole offense," meaning "a class A, B, or C felony or an offense exempt from classification as enumerated in Section 16-1-10(d), which is punishable by a maximum term of imprisonment for twenty years or more." Petitioner's conviction for accessory before the fact is a class A felony because it carries a maximum sentence of 30 years. *See* S.C. Code Ann. §§ 16-1-20(A) (defining class A felony as one that is punishable by not more than 30 years), 16-1-40 (indicating that an accessory before the fact must be punished "in the manner prescribed for the punishment of the principal felon"), and 16-11-380(A) & (D) (setting the punishment for entering a bank with intent to steal at imprisonment for not more than 30 years). Because Petitioner's conviction for accessory before the fact to entering a bank with intent to steal is considered a "no parole offense," he must serve 85% of his 15-year sentence before he is eligible for parole or to max out under South Carolina law.   Petitioner's Ground One claim fails to state a habeas claim, and otherwise fails on its merits, and the undersigned recommends the court grant summary judgment to Respondent.

2.    Ground Two

In Ground Two, Petitioner contends that he received ineffective assistance of counsel, incorporating by reference his PCR claims. Respondent argues that Petitioner's Ground Two claims should be denied because the PCR court made reasonable factual findings and reasonably applied federal law in dismissing them. In his response to

summary judgment, Petitioner does not substantively address Respondent's arguments on Ground Two.

To prevail on his ineffective assistance of counsel claims, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S.Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S.Ct. at 788 (*quoting Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). In evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential

standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S.Ct. at 788. In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id., quoting Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

a.    Alleged Misconduct in Changing Public Defenders

During his PCR evidentiary hearing, Petitioner testified that he believed there had been some misconduct when his case was transferred from Ms. Jilliam Ullman to Mr. Mellard at the public defender's office. [ECF No. 10-1 at 39–40]. He claims he provided Ms. Ullman with documents before he was informed that Mr. Mellard would be taking over his representation. He complains that he only learned of the transfer of representation when he spoke to the receptionist at the public defender's office. *Id.* at 39. Plea counsel testified that he received Petitioner's case to avoid a conflict with the other county public defender's office, which was representing one of Petitioner's codefendants. *Id.* at 61. Plea counsel testified that he wrote Petitioner a letter dated November 30, 2009, informing him

15

of the change in counsel. *Id.* at 55, 62.   The letter was marked and entered as Respondent's

Exhibit No. 1 to the PCR hearing. *Id.*at 55–56.

This claim regarding plea counsel was presented to and rejected by the PCR court.

The PCR court found:

> This Court finds that one of the attorneys in the public defender's office was
> initially appointed to represent Applicant but his case was transferred to
> another attorney in the public defender's office who worked in a separate
> area to avoid any potential conflicts that might arise from co-defendant
> representation. Both attorneys were employed by the public defender's
> office and prior counsel provided Applicant's file to aid in Applicant's
> representation when plea counsel assumed responsibility for Applicant's
> case. As to documents or personal information provided to his first attorney,
> Applicant conceded in his allegation he was provided copies of the
> documents. Applicant failed to show that he ever requested the original
> documents or that counsel refused to return original documents. Applicant
> also failed to show how this issue impacted counsel's representation of
> Applicant in this criminal matter such that counsel provided ineffective
> assistance. The Court finds that Applicant failed to show that the change in
> counsel, discussions between the attorneys in their representation of
> Applicant, or matters respecting documents or personal information not
> returned to Applicant resulted in deficient performance on the part of counsel
> or the requisite prejudice to Applicant to establish ineffective assistance of
> counsel in this respect. Applicant's contention that some ethical issue arose
> in this regard, without more, does not support a finding of ineffective
> assistance of counsel. *See Langford v. State*, 310 S.C. 357, 360, 426 S.E.2d
> 793, 795 (1993) (stating that to the extent an applicant relies on ethical rules,
> the "Rules of Professional Conduct" have no bearing on the constitutionality
> of a criminal conviction).
>
> This Court finds that Applicant's contentions that counsel failed to conduct a
> proper investigation and advise him correctly concerning sentencing
> consequences to be lacking in credibility. This Court finds that counsel
> conducted a thorough investigation, was fully prepared, and properly
> advised Applicant respecting the legal issues involved in the charges he
> faced and to which he entered the plea, including the elements of the
> offenses, the evidence the State would present against him at trial,
> Applicant's version of the facts possible defenses, and potential sentencing
> consequences. Counsel conferred with Applicant about the plea offer

extended by the S[t]ate and correctly advised Applicant about the sentencing consequences. Counsel advised Applicant of these matters at length in person and in writing as was established by the exhibits admitted as evidence at the evidentiary hearing.

*Id.* at 72–73.

> b.     Alleged Intimidation by Public Defender

Next, Petitioner alleges that he felt pressured into pleading guilty by Mr. Mellard. Mr. Mellard testified at PCR that he reviewed the evidence against Petitioner with him, including video and audio tapes of the bank robbery. *Id.* at 60. He testified as to a letter dated January 21, 2010, that he delivered to Petitioner and discussed with him, in which he relayed the solicitor's offer of 18 years. *Id.* The letter also noted that the solicitor told him that if Petitioner didn't take the offer, that he would notice him for life. *Id.* The letter was marked and entered as Respondent's Exhibit No. 3 to the PCR hearing. *Id.*at 59–61. Mr. Mellard testified that "[t]he solicitor kept telling me that he was planning to notice him with life if we couldn't work something out." *Id.* at 56.

Petitioner also testified at PCR that "Mr. Mellard made a statement to me, an intimidating statement that he didn't care if Jesus Christ came in the courtroom to represent him that I was going to get life." *Id.* at 38. When asked if he told him the part about Jesus Christ, Mr. Mellard said:

> Well, what I probably told him was that if he went to trial and they served him with notice and he was convicted that Jesus Christ would be his lawyer, he'd still get life, because once you get served with notice and if you get convicted, I don't care who your lawyer is the Judge has no discretion.

*Id.* at 54–55. When asked if there is a possibility that perhaps his saying that may have intimidated Petitioner, Mr. Mellard testified, "I don't think anybody could intimidate Mr. Drayton, to tell you the truth." *Id.* at 55.   Mr. Mellard testified that he communicated the 15-year offer to Petitioner without coercion, and that he was prepared to go to trial if Petitioner had rejected the offer. *Id.* at 63. He testified that the choice of pleading guilty was Petitioner's, that "basically, I feel like my job is to go out and to look at the law, look at the facts, give him my opinion, but the ultimate choice is his." *Id.* at 64–65.

This claim regarding plea counsel was presented to and rejected by the PCR court. The PCR court found:

> This Court also rejects Applicant's allegation that counsel coerced his guilty plea by threat of a life sentence or otherwise or that counsel instructed Applicant how to answer all of the plea judge's guilty plea questions in order to induce or coerce the plea. This Court finds that counsel properly advised Applicant about the potential sentencing consequences depending on the manner in which Applicant elected to resolve the charges.

*Id.* at 74.

### c.     Alleged Omission of Reading of Constitutional Rights

Lastly, Petitioner claims that he was not informed of his constitutional rights at the guilty plea. Although the transcript reflects his presence in the courtroom, Petitioner maintains that he was actually talking to Mr. Mellard and was not provided a full explanation of his constitutional rights during the proceeding.   *Id.* at 36–37.   Mr. Mellard testified at PCR that although he could not remember whether Petitioner was in the court when Judge Williams discussed constitutional rights, he explained that Judge Williams "would generally make sure that everybody was out here, and . . . [t]hen he'd give them

their three rights, and then he'd sit them down and tell them, you don't have to plea. I'm just giving you your rights." *Id.* at 53–54. Plea counsel also testified that he explained Petitioner's constitutional rights to him before the plea. *Id.* at 57–60, 64–65.

This claim regarding plea counsel was presented to and rejected by the PCR court.

The PCR court found:

> This Court also finds Applicant's testimony that he was absent from the courtroom during the initial part of the guilty plea colloquy is refuted by the record. The transcript reflects Applicant was present in the courtroom when the plea court explained Applicant's constitutional rights. This Court finds Applicant's testimony to the contrary to be lacking in credibility. Moreover, this Court finds that Applicant's counsel fully explained all constitutional rights to Applicant prior to the guilty plea and that Applicant entered the guilty plea with a full understanding of the consequences of the guilty plea, including the constitutional rights being waived. Applicant affirmed this fact at the plea proceeding. (Tr. pp. 7–8).

*Id.* at 74.

### d.     Analysis

The undersigned finds that the PCR court made reasonable findings of fact and reasonably applied federal law in denying these claims in light of the evidence presented. The PCR court's factual findings are based, in part, on its assessment that Petitioner's testimony was not credible, while plea counsel's testimony was credible. The PCR court's credibility determination is entitled to deference in this action. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose

demeanor has been observed by the state trial court, but not by them."). Petitioner may overcome this presumption of correctness only by showing "'clear and convincing evidence to the contrary.'" *Wilson v. Ozmint*, 352 F.3d 847, 858–59 (4th Cir. 2003) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 240 (2003)). Petitioner has shown no cause to discount the PCR court's credibility determination.

The undersigned can find no basis in the record on which to overturn the state court decision. The record reflects that the Petitioner voluntarily and knowingly entered his guilty plea in open court after the advice of counsel. ECF No. 10-1 at 3–16.

At his guilty plea, Petitioner stated that he understood the charges he was facing, the evidence the State had against him, that he faced a potential punishment of 30 years' imprisonment, and his constitutional rights, including his right to remain silent, right to a jury trial, right to have the grand jury consider the reduced charges; that, aside from the negotiated sentence of 15 years, no one had promised him or threatened him to induce the guilty plea; and that he was satisfied with his attorney and told him everything about the case so he could give proper advice. *Id.* at 9–11. Petitioner has not provided any evidence that he did not intend to plead guilty to the charge, under oath to the presiding judge, without objection in open court. Statements of the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be, such as ineffective assistance of counsel. *Via v Superintendent, Powhatan Correctional Center*, 643 F.2d 167, 171 (4th Cir. 1981). Petitioner has provided no evidence to show ineffective assistance of counsel in his case. Rather, the record shows that Petitioner had been advised

by trial counsel, and that the consequences of his plea were fully explained to him by his counsel and by the court. The record also clearly shows that Petitioner was given every opportunity to change his mind, and he denied he had been coerced or forced to act in any manner concerning his plea. Hence, the record shows that Petitioner chose to enter a plea of guilty, and did so freely and voluntarily. *Little v. Allsbrook*, 731 F.2d 238 (4th Cir. 1984); *U.S. v. Futeral*, 539 F.2d 329 (4th Cir. 1976).

Petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding Petitioner's claims concerning the alleged misconduct in the change of public defenders, in the alleged intimidation by Mr. Mellard, or the alleged omission of reading of his constitutional rights. Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination of these issues given the evidence and record before it. *Evans v. Smith*, 220 F.3d 306, 312 (4th Cir. 2000) (federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding); *Williams v. Taylor*, 529 U.S. 420 (2000); *Bell v. Jarvis*, 236 F.3d 149, 157-158 (4th Cir. 2000); 28 U.S.C. § 2254(e)(1) (determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence). Therefore, Petitioner has failed to overcome the deferential standard of review accorded the state PCR court's determination of these issues. As a result, Petitioner has failed to show he is entitled to federal habeas corpus relief.

The PCR court made reasonable factual findings that are supported by the record. Furthermore, the PCR court reasonably applied *Strickland* in finding that plea counsel did not render ineffective assistance of counsel. Petitioner also suffered no prejudice. Notably, although Petitioner was facing a potential life sentence had he been convicted of the offense he was originally charged with in light of his prior criminal record [ECF No. 10-1 at 56]], plea counsel was able to negotiate for Petitioner to plead to a lesser offense and to be sentenced to 15 years. The PCR court's findings of fact and application of federal law were reasonable and should not be disturbed in this habeas action.

Petitioner cannot establish that he is entitled to federal habeas relief on any ineffective assistance of counsel claim in Ground Two under 28 U.S.C. § 2254(d), and the undersigned recommends that it be denied and dismissed with prejudice.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Respondent's motion for summary judgment [ECF No. 9] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

March 31, 2015                                    Shiva V. Hodges
Columbia, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*   Fed. R. Civ. P. 6(a), (d).   Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**   28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).